CORTINAS, J.
 

 Appellee, Miguel Fonseca, was injured in a car accident allegedly caused by a policyholder of Appellant, Mercury Insurance Company of Florida. Fonseca sued the policyholder, who raised the existence of a settlement as an affirmative defense. In a separate action, Mercury sought a declaratory judgment recognizing the validity of the same settlement. The trial court consolidated the two cases. The single issue on appeal is whether correspondence between Fonseca and Mercury was sufficient to form a settlement. The trial court held that it was not. We disagree and reverse.
 

 After the accident, counsel for Fonseca sent Mercury a letter stating that:
 

 This letter shall serve as a formal demand for a tendering of any and all available policy limits including umbrella coverages.
 

 Two days later, Mercury responded:
 

 As requested, this carrier is tendering it’s [sic] bodily injury policy limits. Accordingly, enclosed is this carrier’s settlement check in the amount of $10,000.00.
 

 Also enclosed is a proposed settlement release which is not intended to be a final instrument until you have approved. If you should require any changes or additions, please advise. Otherwise, please see that [Fonseca] executes the release.... ”
 

 
 *417
 
 We review de novo the legal question of whether a contract was formed.
 
 Munroe v. U.S. Food Serv.,
 
 985 So.2d 654, 655 (Fla. 1st DCA 2008). The law of contracts governs settlements.
 
 Robbie v. City of Miami,
 
 469 So.2d 1384, 1385 (Fla.1985). To form a binding contract there must be an offer and acceptance.
 
 See Etheredge v. Barkley,
 
 25 Fla. 814, 6 So. 861 (1889).
 

 The demand letter sent by Fonseca’s counsel is not unique and the question of whether it constitutes an offer has already been answered by this Court.
 
 Peraza v. Robles,
 
 983 So.2d 1189, 1190 (Fla. 3d DCA 2008); see
 
 Nichols v. Martell,
 
 612 So.2d 657, 658 (Fla. 3d DCA 1993) (finding that a similar demand letter was more than a mere invitation to settle). The demand letter in
 
 Peraza
 
 stated “Please tender the policy limits within fifteen (15) days or we will consider [the insurance company] is acting in bad faith.”
 
 [1]
 
 Here, as was the case in
 
 Peraza,
 
 the demand letter constituted an offer to settle.
 

 Once Fonseca offered to settle, all that was required to form a binding contract was acceptance by Mercury. In
 
 Erhardt v. Duff,
 
 729 So.2d 529 (Fla. 4th DCA 1999), Erhardt was injured when he and Duff were in a car accident. Erhardt sent to Duffs insurance company a demand for tender of the policy limits.
 
 See id.
 
 Like Mercury, the insurance company in
 
 Er-hardt
 
 agreed to settle only if the injured party signed a release.
 
 Id.
 
 at 530. The court determined that the requested release did not transform the insurance company’s acceptance into a counteroffer, holding that “the execution of the release was implicit as part of the tender, and not an additional element of the agreement.”
 
 Id.; Nichols,
 
 612 So.2d at 658 (accepting an offer to settle an auto insurance claim does not become a counteroffer merely because the tender of policy limits includes a release). A document releasing an insurance company from liability for claims arising from the same incident for which the full policy limits were tendered, particularly where the injured party is permitted to modify such a release, is the kind of usual settlement document implicit in any settlement agreement.
 
 [2]
 

 See Peraza,
 
 983 So.2d at 1190;
 
 Nichols,
 
 612 So.2d at 658;
 
 Erhardt,
 
 729 So.2d at 530. Here, Fonseca offered to settle, Mercury accepted, and a contract was formed.
 

 Reversed and remanded.
 

 [1]
 

 . Mercury's Motion for Reconsideration. R. Vol. V. p. 874.
 

 [2]
 

 . Substantial modification to a release may, under certain circumstances, evidence that a contract was not formed. This is especially true where the modification is proposed at or near the time of tender. Here, in contrast, Fonseca made an offer on September 14, 2004, which Mercury responded to by tendering payment and requesting a release two days later, on September 16, 2004. Fonseca did not object to the tender or the proposed release until 60 days later, on November 15, 2004.